# United States Court of Appeals
## For the First Circuit

No. 02-2392

UNITED STATES OF AMERICA,

Appellee,

v.

KEILA MEDINA-ROMÁN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Bruce J. McGiverin, was on brief, for appellant.
David Rivera, Assistant United States Attorney, with whom H.S. García, United States Attorney, Sonia I. Torres-Pabón, Assistant United States Attorney, Chief, Criminal Division, and Jenifer Y. Hernández-Vega, Assistant United States Attorney, were on brief, for appellee.

July 12, 2004

**TORRUELLA, Circuit Judge.** Keila Medina-Román ("Medina") seeks an opportunity to withdraw her plea of guilty to the charge of aiding and abetting the carrying of a firearm in the commission of a drug trafficking offense in violation of 18 U.S.C. § 924 (c)(1).[1] Medina challenges the district court's colloquy under Fed. R. Crim. P. 11, arguing that she was inadequately informed of the elements of the crime to which she pleaded guilty. Because Medina did not object to the Rule 11 proceedings below, we review under the plain error standard. See United States v. Vonn, 535 U.S. 55, 59 (2002). After careful review, we affirm Medina's conviction.

## I.

Medina was a police officer for the Commonwealth of Puerto Rico when she became involved in a conspiracy to distribute controlled substances. The operation involved the transport for payment of what Medina and her co-defendants believed to be a

---

[1] This sub-section enhances the sentences of

> any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . .

18 U.S.C. § 924(c)(1)(A).

quantity of cocaine. On November 11, 2001, Medina was indicted on seven counts along with three co-defendants, including her husband Richard Díaz-Baerga. Arrested on November 27th, Medina pleaded not guilty to all counts at her arraignment three days later. After the government filed motions designating evidence, Medina filed for a change of plea hearing, which was granted.

During the plea colloquy at issue, Medina pleaded guilty to Counts One, Two, and Seven, pursuant to a written plea agreement with the government filed that day.[2] With respect to Count Two, charging Medina and Díaz-Baerga with aiding and abetting each other in carrying firearms in relation to a drug trafficking offense, Medina informed the district court that although she was aware that there were weapons in the conspiracy, she herself never carried a weapon.

The question before us is whether the colloquy that ensued demonstrates that the district court "inform[ed] [Medina] of, and determine[d] that [she] underst[ood] . . . the nature of the charge to which the plea [was] offered," Fed. R. Crim. P. 11(c)(1), and if not, whether any error commands the exercise of our discretion to give Medina an opportunity to withdraw her plea.

---

[2] Count One charged Medina with conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Two, at issue in this appeal, charged aiding and abetting the carrying of firearms in violation of 18 U.S.C. § 924 (c)(1)(A), and Count Seven charged forfeiture under 21 U.S.C. § 853. As part of the plea agreement, all other counts against Medina were dismissed.

**II.**

Rule 11(c)(1)[3] establishes a procedure for district courts to ensure that a plea of guilty is constitutionally valid. Above all else, a plea must be "'voluntary' and 'intelligent.'" Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). The Supreme Court has "long held that a plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against [her], the first and most universally recognized requirement of due process.'" Id. (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)). Reading the indictment to the defendant is not enough if "the District Court subsequently misinformed [her] as to the elements of a § 924(c)(1) offense." Id.

The first step, then, is to ascertain the elements the government would have to prove to convict Medina under Count Two. The parties direct us to superficially divergent circuit authority which we must reconcile in order to proceed. The government contends that its burden at trial would be to "prove that the accomplice must have known 'to a practical certainty' that a

---

[3]  The colloquy took place on April 26, 2002, prior to the amendment of Rule 11 on December 1, 2002. The operative language from the former Rule 11(c)(1) is now found at Rule 11(b)(1)(G).

firearm would be used or carried during a qualified offense."[4]  To
support this proposition, the government relies primarily on United
States v. Balsam, 203 F.3d 72 (1st Cir. 2000), and United States v.
DeMasi, 40 F.3d 1306 (1st Cir. 1994).  Medina, on the other hand,
draws our attention to United States v. Luciano-Mosquera, 63 F.3d
1142 (1st Cir. 1995), to support her contention that the government
carries the burden of not one, but two, elements on this count: it
must show the defendant's knowledge of the co-defendant's
"carrying" of a firearm and, further, that the defendant has "taken
some affirmative action that facilitated violation of § 924(c)(1)."
Id. at 1150.

Our cases have failed to make transparent the relation
between these two articulations, and as we must begin our analysis
of the Rule 11 proceedings with an understanding of what Medina

---

[4]  In its brief, the government states that "[s]ince a Pinkerton-
type of liability is appropriate as an alternative theory in a
§ 924(c) violation, Keila Medina-Román could be held responsible
for a firearm carried by a co-conspirator in furtherance of a drug
trafficking crime, if she was a member of the conspiracy, and if it
was reasonably foreseeable to her that a firearm would be carried
in relation to the drug trafficking offense."  It is true that a
jury may be instructed to consider the liability theory established
in Pinkerton v. United States, 328 U.S. 640 (1946), as an
alternative ground for conviction under § 924(c)(1) in addition to
an aiding and abetting theory under 18 U.S.C. § 2.  United States
v. Shea, 150 F.3d 44, 49-51 (1st Cir. 1998).  During the colloquy,
however, the government stated before the district court that
"Count Two is charged under the aiding and abetting theory."
Because Medina was not informed that she was chargeable with Díaz-
Baerga's carrying of a firearm under the Pinkerton reasonable
foreseeability standard, our review of the adequacy of the Rule 11
proceedings tracks the aiding and abetting charge and its burdens
of proof.

should have understood the government to be required to prove at trial, we will take the opportunity to discuss the matter here. The roots of modern doctrines of aiding and abetting liability can be traced to Judge Learned Hand's famous formulation in United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938), and the Supreme Court's endorsement of that formulation in Nye & Nissen v. United States, 336 U.S. 613, 619 (1949).  As stated by the Court:

> In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed."

Id. (quoting Peoni, 100 F.2d at 402).  That concise expression has been the source of multifarious approaches to the difficult task of determining what the law requires to convict an accomplice as a principal.  See generally Baruch Weiss, What Were They Thinking?: The Mental States of the Aider and Abettor and the Causer under Federal Law, 70 Fordham L. Rev. 1341 (2002).  We have recognized that the requisite burden of proof can vary from one aiding and abetting crime to another.  See, e.g., United States v. Spinney, 65 F.3d 231, 236-37 (1st Cir. 1995) (noting that conviction for aiding and abetting firearm charge under 18 U.S.C. § 2113(d) requires lesser degree of knowledge than under 18 U.S.C. § 924(c)).  We are

-6-

concerned here with the crime of aiding and abetting the use or carrying of a firearm in violation of 18 U.S.C. § 924(c)(1).[5]

Our cases treating the subject have generally involved a claim that the government introduced insufficient evidence to support a conviction. In United States v. Torres-Maldonado, 14 F.3d 95 (1st Cir. 1994), we began our analysis by stating that, "[i]t is well settled in the case law interpreting section 924(c)(1) that an 'accomplice must have known to a practical certainty that the principal would be [using] a gun.'" Id. at 103 (quoting United States v. Powell, 929 F.2d 724, 728 (D.C. Cir. 1991)). The D.C. Circuit's holding in Powell, which we followed in Torres-Maldonado, explains that the "[practical certainty] standard puts the accomplice on a level with the principal, requiring the same knowledge for both." Powell, 929 F.2d at 727 (citations omitted). By recognizing that when an accomplice is practically certain the principal will be carrying or using a gun he bears guilt for the carrying or use of that weapon as if he were the

---

[5]  We follow circuit precedent in requiring the same standard of culpability for conviction for aiding and abetting the use of a firearm in violation of § 924(c)(1) as for aiding and abetting the carrying of a firearm in violation of § 924(c)(1). See, e.g., United States v. Bennett, 75 F.3d 40, 45 (1st Cir. 1996); United States v. Sullivan, 85 F.3d 743, 747-48 (1st Cir. 1996); United States v. Otero-Méndez, 273 F.3d 46, 52-53 (1st Cir. 2001). But see Note, A Question of Intent: Aiding and Abetting Law and the Rule of Accomplice Liability Under 924(c), 96 Mich. L. Rev. 783, 799 (1997) (recommending a more stringent burden of proof for conviction for aiding and abetting the carrying of a firearm as opposed to its use).

principal, Powell invokes the Peoni principle: if this accomplice is participating in the predicate crime with a practical certainty that his co-defendant is also violating § 924(c)(1), then the elements are present to infer that regarding the carrying or use of the firearm the abettor has "in some sort associate[d] himself with the venture . . . , he participate[d] in it as in something that he wishe[d] to bring about, [and] that he [sought] by his action to make it succeed." Nye & Nissen, 336 U.S. at 619.

In Luciano-Mosquera, 63 F.3d 1142, we were faced with several defendants challenging, inter alia, the sufficiency of the evidence on aiding and abetting § 924(c) charges. The case involved a major drug delivery to a Puerto Rico beach. After a raid, officers arrested a number of men and found an M-16 underneath a jeep where several of them were hiding. After citing to the Peoni formulation (as expressed in First Circuit case law), we explained that

> [m]ere association with the principal, or mere presence at the scene of a crime, even when combined with knowledge that a crime will be committed, is not sufficient to establish aiding and abetting liability. The defendant must have taken some affirmative action that facilitated violation of § 924(c)(1).

Id. at 1150 (emphasis supplied) (citation omitted). This language indicates that proof of aiding and abetting the carrying of a firearm includes a distinct facilitation element. "Of course, knowledge that a gun would be carried is also required." Id.

(citing Torres-Maldonado, 14 F.3d at 103, and DeMasi, 40 F.3d at 1316).

The circumstances in Luciano-Mosquera required us to delimit a reasonable factfinder's capacity to infer aiding and abetting the carrying or use of a firearm based on involvement in a drug or violent conspiracy. As to defendant Lugo-Maya, we could not find the basis for the necessary inferences:

> There was no evidence . . . showing that [Lugo-Maya] took any step to assist the carrying of the M-16 in relation to the drug offense. Lugo-Maya was not at the meeting where the M-16 was shown. The government presented no evidence that Lugo-Maya took any steps to procure or otherwise supply the weapons or ammunition. He was also nowhere near the weapon at the time of his arrest. There was simply insufficient evidence to show beyond a reasonable doubt that he either carried or aided and abetted the carrying of the M-16.

Id. Without addressing whether Lugo-Maya possessed the requisite knowledge, we determined that his conviction had to be reversed given the dearth of evidence associating Lugo-Maya in any way with that part of the drug conspiracy which involved the M-16.

The "practical certainty" test for aiding and abetting liability is not applied in a vacuum: a defendant's knowledge that his confederate would carry or use a firearm can only support aiding and abetting liability if the defendant somehow facilitated that carrying. In the ordinary drug or violent crime, that facilitation is part and parcel of the involvement in the drug or

violent scheme.  Cf. DeMasi, 40 F.3d at 1316 n.10 (distinguishing United States v. Medina, 32 F.3d 40 (2d Cir. 1994), in which Second Circuit reversed conviction on insufficient evidence that defendant "consciously and affirmatively assisted" in § 924(c) violation, because the DeMasi defendant "was present at and played a significant part in the attempted armed robbery").  In United States v. Bennett, 75 F.3d 40 (1st Cir. 1996), we rejected a challenge to the sufficiency of the evidence and observed, reflecting on Luciano-Mosquera, that "once knowledge on the part of the aider and abettor is established, it does not take much to satisfy the facilitation element."  Id. at 45.

Since Luciano-Mosquera, we have sometimes referenced the two-part scheme defined there.  See United States v. Otero-Méndez, 273 F.3d 46, 52 (1st Cir. 2001) ("prosecution must prove that appellant knew a firearm would be carried or used in a crime of violence and that he willingly took some action to facilitate that carriage or use"); United States v. Sullivan, 85 F.3d 743, 748 (1st Cir. 1996) ("evidence was sufficient to show that [defendant] knew the shotgun would be used or carried during the robbery and that he took some action intending to cause the gun to be used or carried"); Bennett, 75 F.3d at 45 ("conviction can be sustained . . . if [defendant] knew a firearm would be carried or used by a co-conspirator in the drug trafficking offense and willingly took some action to facilitate the carriage or use").  In other cases,

-10-

we have applied the uniform "practical certainty" test. See United States v. Balsam, 203 F.3d 72, 83 (1st Cir. 2000) ("[T]he evidence supported a rational inference that [defendant] knew to a 'practical certainty' that [co-conspirator] would use a gun in the second robbery."); United States v. Spinney, 65 F.3d 231, 239-40 (1st Cir. 1995) ("This is the rare case in which the evidence . . . fails the practical certainty test and, therefore, does not justify the appellant's conviction for aiding and abetting the principal's use of a firearm during and in relation to a crime of violence.").

While we acknowledge that the inconsistent expressions may engender some confusion, we fail to find any contradiction in the law. Knowledge is the central element of the crime of aiding and abetting the carrying or use of a firearm in violation of § 924 (c)(1). To support aiding and abetting criminal liability under 18 U.S.C. § 2, that knowledge cannot be mere knowledge of a likelihood that a firearm will be carried or used but rather must amount to a practical certainty of the other's carrying or use. See Spinney, 65 F.3d at 238 ("'practical certainty' is a rubric that calls for proof verging on actual knowledge"). That level of knowledge will in many instances stem from such an intimate involvement in the enterprise that the requirement for an affirmative action to facilitate the crime inevitably will be met. In other circumstances, however, a showing of knowledge to a "practical certainty" may be insufficient on its own. That is to say, when an

-11-

accomplice's affirmative link to a principal's carrying or use of a firearm is not implicit by virtue of participation in the predicate crime, even where knowledge of the carrying or use of a firearm could be inferred by a rational factfinder, the prosecution must present evidence permitting the inference that the defendant willingly took some step to facilitate the carrying or use in order to convict of aiding and abetting in violation of § 924(c)(1).  See Luciano-Mosquera, 63 F.3d at 1150-51.

Accordingly, to convict Medina on a charge of aiding and abetting a violation of § 924(c) "[t]he evidence [at trial would be] sufficient [only if the government could] show that [Medina] knew [to a practical certainty] the [firearm] would be used or carried during the [drug trafficking offense] and that [she] took some action intending to cause the gun to be used or carried." Sullivan, 85 F.3d at 748 (citing Luciano-Mosquera, 63 F.3d at 1150).  Therefore, Rule 11(c)(1) entitled Medina to be informed by the district court, and to understand, that the government would have to prove to a practical certainty her knowledge of Díaz-Baerga's carrying of a firearm and that she willingly facilitated that carrying.

## III.

The district court told Medina that as to Count Two "the government has to prove that the two defendants that I have mentioned, yourself and your husband, were aiding and abetting each

-12-

other or helping each other to commit a crime." When asked, Medina replied that she understood. The court added that "in the context of that criminal conduct you knew that firearms would be used or carried." When asked, Medina replied that she understood. The court next stated: "And it's not necessarily determined whether you had it in your pocket or in your holster or not -- do you understand that -- as long as you people, the two of you, were using firearms to commit the offense, that is enough for you to be guilty of this crime. Do you understand that?" Medina responded that she did. The district court then informed Medina of a further component of the charge, with language that directly recalls <u>Peoni</u>: "Here the government also has to prove that you knowingly did -- in other words, that you had a bad purpose to disobey the law in using [a firearm] in the context of aiding and abetting firearms during the commission of a drug trafficking [offense]." When asked, Medina replied that she understood.

While we have not explicitly emphasized the "bad purpose" ingredient of a § 924(c)(1) aiding and abetting offense in our case law, the foundation for <u>Luciano-Mosquera</u>'s recognition of the willing facilitation element was that mere knowledge does not make a defendant an aider and abettor unless he has willingly done something to bring about the other's carrying or use of a firearm. <u>See</u> <u>Luciano-Mosquera</u>, 63 F.3d at 1149-50 ("Aiding and abetting requires that 'the defendant [have] associated himself with the

-13-

venture, participated in it as in something he wished to bring about, and sought by his actions to make it succeed.'") (quoting United States v. Álvarez, 987 F.2d 77, 83 (1st Cir. 1993).  In other words, by informing Medina that the government had to prove that she had a bad purpose as to Díaz-Baerga's carrying of a firearm in the execution of the drug trafficking offense, the district court took steps to ensure that Medina understood (1) that mere knowledge of the carrying was insufficient for conviction; and (2) that the additional element involved the demonstration of her bad purpose as to that carrying.

The district court did not inform Medina that the government would carry the burden, however slight it might have been under the circumstances, of proving that Medina willingly took action facilitating co-defendant Díaz-Baerga's carrying of a firearm.  However, because Medina did not raise her claim of error below, we can only grant her an opportunity to withdraw her plea if she shows with "reasonable probability that, but for the error, [s]he would not have entered the plea." United States v. Domínguez Benítez, __ U.S. __, 2004 U.S. Lexis 4177, at *6 (June 14, 2004) (articulating standard for determining whether a violation of Rule 11 constitutes reversible plain error).  In conjuring the counterfactual colloquy that would have complied with Rule 11, we must be mindful that the "intelligence" requirement of a plea of guilty cuts both ways for a defendant: Rule 11 is disserved if a

-14-

defendant chooses trial based on a misappreciation of the weight -- light or heavy -- of the government's burden as to a charge and its elements. The question is whether Medina has persuaded us to a "reasonable probability" that had she understood "the nature of the charge to which the plea [was] offered," Fed. R. Crim. P. 11(c)(1), she would have chosen trial. Given that Medina pleaded guilty after being informed that her knowledge alone would not suffice for guilt absent proof that she harbored a bad purpose toward the carrying of the firearm, she bears a heavy burden indeed.

To reach our judgment, we review the entire record. Domínguez Benítez, __ U.S. at __, 2004 U.S. Lexis 4177, at *18; Vonn, 535 U.S. at 74-75. Before the district court's recitation of the elements of Count Two, Medina had already stated that "I was aware there were weapons in this conspiracy, and I told the undercover agent that a weapon was going to be taken. That is why I am accepting this weapons charge." The undercover agent referred to here initiated the drug operation by paying Medina and her husband $10,000 as an initial payment for the transportation of the cocaine. Even before carrying out the operation, therefore, Medina knew about the carrying of the firearm and talked about it as part of the plan in which she played a pivotal role. On the day of the operation, as admitted to during the colloquy, Medina provided escort and protection to the vehicle driven by her husband, whom she knew was carrying a firearm. This conduct would easily permit

-15-

a reasonable jury to conclude beyond a reasonable doubt that she aided and abetted the carrying of a firearm. See, e.g., Bennett, 75 F.3d at 45 ("[F]acilitation is essentially undisputed since Bennett provided his car to transport himself, his co-conspirators, and the gun to execute the raid."). If the district court had correctly informed Medina of the elements of the crime, we believe she would have pleaded guilty. Medina has failed to persuade us otherwise to a reasonable probability.

The district court's recitation of the elements of the crime may have been less than ideal, but the colloquy was constitutionally sufficient to ensure that Medina made an intelligent plea and thereby did not prejudice "the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 736 (quotations and citations omitted).

## IV.

For the foregoing reasons, we find no reversible error in the Rule 11 proceedings. The judgment is affirmed.

**Affirmed**.