UNITED STATES of America,

v.

**Jameel GIBBONS, Defendant.**

**Criminal No. 06–10325–NMG.**

United States District Court,
D. Massachusetts.

Sept. 17, 2007.

Mark W. Pearlstein, McDermott, Will & Emery, Boston, MA, for Defendant.

John A. Wortmann, Jr., United States Attorney's Office, Boston, MA, for United States of America.

## MEMORANDUM & ORDER

GORTON, District Judge.

The defendant in this criminal case has filed a motion to suppress certain evidence and statements obtained as a result of a warrantless arrest. The motion, which is opposed by the government, will be resolved as follows.

### I. *Background*

#### A. Procedural History

In October, 2006, the defendant, Jameel Gibbons ("Gibbons"), was indicted on two counts of distribution of cocaine base within 1,000 feet of a housing project in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 860 and 18 U.S.C. § 2 with respect to incidents occurring in April, 2006. The indictment also contains a forfeiture allegation. The defendant moved to dismiss the indictment or suppress certain evidence on the grounds of outrageous government conduct and the Court denied that motion by entry of a Memorandum & Order on April 12, 2007.

In May, 2007, a superseding indictment was returned charging the defendant with two additional counts of distribution of cocaine base, also known as "crack", including an incident occurring on February 8, 2006. In June, 2007, the defendant filed a motion to suppress certain evidence and statements obtained in conjunction with his arrest in February, 2006.

#### B. Factual Background

The following facts are derived from an affidavit dated August 27, 2007, submitted by Joao Monteiro ("Agent Monteiro"), a Task Force Agent with the Drug Enforcement Administration ("DEA"), as well as two other reports filed shortly after the arrest of the defendant. On February 8, 2006, Agent Monteiro, along with other DEA and Task Force agents, was in the area of the Bromley–Heath Housing Project in Jamaica Plain ("the Project") for the purpose of making a controlled drug purchase through a confidential informant known as CI–1, with whom Agent Monteiro had worked on several successful past operations.

The agents intended to conduct what is known as a "program buy" in which a

confidential informant buys drugs for the purpose of gathering intelligence regarding the availability and purity of illegal drugs in a particular area but such buys are not necessarily prosecuted. The goal of the agents on February 8, 2006, was to buy heroin from area dealers using CI–1. The informant was equipped with a radio transmitter to communicate with agents but not a recording device.

The agents drove CI–1 to the area of Jackson Square in Jamaica Plain, near the Project, and dropped him/her off. They observed CI–1 interact with a black male, later identified as the defendant. According to the Monteiro Affidavit and the police reports, the agents observed the defendant walk with CI–1 to 279 Centre Street, a building within the Project, and heard the two individuals having a drug-related conversation over the transmitter. According to Agent Monteiro, the two individuals walked right past his car and he had a clear view of the defendant at that time. Agent Monteiro, in fact, took note that the defendant walked with a limp.

After the defendant and CI–1 arrived at 279 Centre Street, they disappeared from the sight of the agents. Shortly thereafter, CI–1 contacted Agent Monteiro over the transmitter and told him that the defendant had taken his/her money. Agent Monteiro then called CI–1 on his/her cellular telephone. The informant explained that as they approached 279 Centre Street, the defendant had shown CI–1 several bags of what appeared to be heroin. When they reached the door, the defendant grabbed the informant's money and shut the door, denying him/her access to the building. Agent Monteiro instructed the CI to bang on the door which he apparently did but the defendant never returned.

After calling for backup, Agent Monteiro and other agents went looking for the defendant. Approximately 20 minutes later, they saw him in the vicinity of the Jackson Square subway stop. Agent Monteiro, who had earlier observed the defendant with CI–1 at close range, approached Gibbons and told him that he wanted to talk to him. When Agent Monteiro attempted to pat frisk him for weapons, the defendant became "rigid" and resisted, reaching for his pocket. Agent Monteiro felt the pocket and removed an object which turned out to be $100 consisting of bills in similar denominations as had been previously provided to CI–1. At that point, the defendant was placed under arrest.

The defendant was subsequently transported to a Boston police station and booked in the usual manner. During the booking process, the defendant admitted that he was in possession of contraband and retrieved several small plastic bags containing what appeared to be marijuana and crack. As the defendant was removing his sweatshirt, another set of bags containing what appeared to be crack fell to the floor.

## II. *Analysis*

### A. **Legal Standard**

 The exclusionary rule requires the suppression of evidence obtained as a direct result of an unlawful search or arrest. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Law enforcement officers may only make a warrantless arrest if there is probable cause to believe that the suspect has committed or is committing a crime. *United States v. Martinez–Molina,* 64 F.3d 719, 726 (1st Cir.1995). Probable cause is a "fluid concept" that turns on the assessment of probabilities in particular factual contexts and must be evaluated in light of the totality of the circumstances. *See id. (quoting Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). To establish probable cause, the government must show that, at the time of

the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense. *United States v. Torres–Maldonado,* 14 F.3d 95, 105 (1st Cir.1994).

■ Where, as here, some of the information contributing to the probable cause determination comes from an informant, the reliability of the informant and the basis for the information given are factors to be considered in the probable cause determination, but neither complete corroboration nor absolute veracity are required. *See United States v. Schaefer,* 87 F.3d 562, 566 (1st Cir.1996).

### B. Application

The defendant contends that the agents lacked probable cause to arrest him and that, therefore, the statements he made during the booking process as well as the contraband recovered should be suppressed. The defendant did not have access to the Monteiro affidavit prior to filing his motion and bases his argument on a DEA report of investigation and a Boston Police report, both of which were prepared shortly after the defendant's arrest.

The defendant does not challenge the veracity of those reports but argues that they fail to establish that the agents had probable cause to arrest him. According to the defendant, the only basis for his arrest was that the agents had observed a "black male" walking with the CI towards 279 Centre Street and that Agent Monteiro observed the defendant, a black male, near Jackson Square approximately 20 minutes later. The defendant argues that, at least as described in the reports, the agents had insufficient information to identify the defendant as the suspect because there are many black males in the Jackson Square area and the reports make no mention of the clothing he was wearing, his height, weight or other characteristics that would help identify him as the suspect. Although the CI identified the defendant as the individual who had taken his/her money after the arrest, the defendant contends that the police did not have the benefit of that identification at the time the arrest was made and, therefore, they lacked probable cause to make the arrest.

■ The defendant flatly mischaracterizes the nature of the DEA and Boston Police reports, both of which were submitted as exhibits to his motion to suppress. In the Boston Police report, prepared by another officer who was present during the incident, it states that the agents observed the CI with the defendant and both individuals were "under constant surveillance" as they walked towards 279 Centre Street. When Agent Monteiro later spotted the defendant at Jackson Square, the report states that he "recognized Gibbons as the individual" that had been with the informant just 20 minutes earlier.

Similarly, in the DEA Report of Investigation, also prepared by another agent present during the arrest, the reporting agent states that Agent Monteiro "recognized [the defendant] as being the subject who was seen with [CI–1] walking up Centre Street towards # 279". Both the Boston Police and the DEA report, therefore, make it clear that the agents observed the CI with the defendant prior to the botched drug transaction and recognized him minutes later in the same area.

The agents also had the following evidence at the time of the arrest: 1) they had overheard the CI and the defendant talking about drugs over the transmitter, 2) the CI immediately reported that his/her money had been taken by the defendant, 3) the CI immediately described the drugs that had been shown to him/her by the defendant, 4) the defendant became rigid and reached for his pocket as he was approached by Agent Monteiro and 5) the

defendant had $100 in his pocket in the same denominations as had previously been provided to the CI. Finally, the agents had past dealings with the CI and knew him/her to be reliable and the CI's report of the events was corroborated by contemporaneous observation by the agents.

In short, the agents had gathered more than enough evidence to support a finding of probable cause for the arrest. The DEA and Boston Police reports set forth the information available to the agents at the time of the arrest with sufficient detail and the affidavit of Agent Monteiro completes the picture. The defendant has not disputed the credibility of the information provided in the reports or the affidavit and challenges his arrest on legal grounds. The Court, therefore, concludes that no evidentiary hearing is required in this matter and the defendant's motion to suppress will be denied.

### ORDER

In accordance with the foregoing, the defendant's motion to suppress (Docket No. 37) is **DENIED.**

**So ordered.**