# United States Court of Appeals
## For the First Circuit

---

Nos. 13-1633 & 13-1657

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE L. MARTINEZ-RODRÍGUEZ AND JOEL SANTINI-MENDEZ,

Defendants-Appellants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

---

Before

Howard, Lipez, and Barron,
Circuit Judges.

---

Michael R. Hasse, for Jose L. Rodríguez-Martinez, appellant.
Victoria M. Bonilla-Arqudo, for Joel Santini-Mendez, appellant.
Rosa Emilia Rodríquez-Velez, United States Attorney, with whom Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Tiffany V. Monrose, Assistant United States Attorney, were on brief for appellee.

---

February 20, 2015

---

**LIPEZ, <u>Circuit Judge</u>**.  Appellants Jose Luis Rodríguez-Martinez ("Rodríguez") and Joel Santini-Mendez ("Santini") were sentenced in the United States District Court of Puerto Rico to terms of eighty-eight months and seventy months, respectively, for aiding and abetting the attempted possession of narcotics with intent to distribute in violation of 21 U.S.C. § 841, and aiding and abetting the possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c). Separately, Rodríguez pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

On appeal, each defendant challenges the sufficiency of the evidence to support certain convictions.  Rodríguez claims that there was insufficient evidence for the jury to conclude that he aided and abetted Santini's attempted possession of narcotics (and, as a result, that his possession of a firearm was not in furtherance of that crime).  Santini, by contrast, claims there was insufficient evidence to show he possessed a firearm in furtherance of a drug-trafficking crime.

We agree that the government failed to produce sufficient evidence from which a rational jury could conclude that there was a relationship between the respective contraband possessed by Santini and Rodríguez, and we thus reverse those challenged convictions.  Having concluded that we must reverse those

-2-

convictions, we do not reach the other trial and sentencing errors that the defendants raise.

**I.**

**A. Factual Background**

We recite the facts as the jury could have found them, viewing the evidence in the light most favorable to the jury verdict. See United States v. Beltran, 503 F.3d 1, 2 (1st Cir. 2007). On August 10, 2012 two police officers, Edwin Morales-Sanchez ("Morales") and Orlando Abreu of the Carolina Puerto Rico Police Department Traffic Patrol, conducted a traffic stop at the intersection of Puerto Rico Roads 181 and 852. Morales had spotted a 2002 Honda Accord as it was leaving a parking lot from a hardware store with tinted windows that he suspected were in violation of Puerto Rico traffic law.[1] Santini was in the driver's seat of the car, and Rodríguez was in the front passenger seat.

As soon as the car was pulled over by the police, Rodríguez stepped out of the car, said "Thank you" to Santini, began walking along the side of the street adjacent to a stone wall, and made a call on his cell phone. When Rodríguez remained stationary at the wall, Morales turned to Santini and informed him that he had stopped the car because of its tinted windows. He then

---

[1] The police officers suspected the tint on the windows was in violation of article 1005 of Law 22 of the Traffic Laws of the Commonwealth of Puerto Rico [Window Tint Violation]. The Honda Accord's window tint was ultimately determined to be within legal limits.

asked for the car's registration and Santini's driver's license. Santini told Morales that the car was not his and that he needed to look in the glove compartment to see if he could find the car's registration.

Morales and Abreu then observed Rodríguez's hands shaking as he was talking on his cell phone. Abreu approached Rodríguez and said, "Do me a favor and lift up your shirt." Rodríguez responded, "Why? Why do I have to lift up my shirt? But why?" Morales then asked Rodríguez to put his hands on the wall, and Abreu proceeded to lift Rodríguez's shirt and then "bent down to put something on the ground." Morales then observed a fully loaded, .45 caliber Glock Model 21 pistol with an extended magazine of twenty-four bullets on the ground. In addition, $93.50 was found on Rodríguez. Rodríguez was then arrested.

Morales turned to Santini, informing him that he was going to search him. After he searched his waist area and his chest, he felt Santini's pockets "bulging" and asked him to empty the contents of his pockets onto the trunk of the car. Santini placed a large clear bag on the trunk containing 10.2 grams of a white powdery substance, which Morales thought was cocaine. In actuality, as subsequent testing determined, the white powder was not cocaine. Santini also placed a 13.1 gram bag of marijuana onto the trunk and $1,029 in cash, in the form of forty-seven $20 bills,

-4-

a single $5 bill, and eighty-four $1 bills. Inside the bag containing the marijuana there were ten small, clear plastic bags.

Santini and Rodríguez were separately taken to the police station where they were questioned by Agent Omar Meléndez-Maldonado, a Task Force officer for the DEA. Santini stated that Rodríguez was his brother-in-law. He admitted to purchasing the white powdery substance (the "sham"[2] cocaine) for $150 at the Manuel A. Perez Housing Project and that it was intended for resale. He stated that the marijuana was for his personal use. Rodríguez told Agent Meléndez that he did not have a permit to carry the Glock pistol and that he purchased it for $800 at the Monte Park Housing Project. He admitted that he had shot the weapon on three prior occasions.

## B. Procedural Background

On August 16, 2012, a grand jury returned a two-count indictment charging Rodríguez and Santini with aiding and abetting the attempted possession of narcotics with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count Two), and aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Three). On October 17, 2012, a superseding indictment was filed adding the charge of felon in possession of a firearm in violation of 18

---

[2] Santini referred to the "sham" cocaine as "corte."

U.S.C. § 922(g)(1) against Rodríguez (Count One). He pled guilty to that charge.

On December 20, 2012, after a three-day trial, a jury found Rodríguez and Santini guilty of Counts Two and Three. On April 19, 2013, the district court sentenced Rodríguez to sixteen months imprisonment for Counts One and Two, and seventy-two months as to Count Three, to be served consecutively for a total of eighty-eight months. The district court sentenced Santini to ten months as to Count Two, and sixty months as to Count Three, to be served consecutively for a total of seventy months.[3]

On appeal, Rodríguez challenges the sufficiency of the evidence to support the convictions for attempted possession of drugs with the intent to distribute and the possession of a firearm in furtherance of a drug-trafficking offense. Santini only challenges the sufficiency of the evidence to support his conviction for possession of a firearm in furtherance of drug trafficking.

**II.**

Challenges to the sufficiency of the evidence are reviewed de novo. Beltran, 503 F.3d at 2. The inquiry into the sufficiency of the evidence focuses on whether a rational jury

---

[3] Aiding and abetting the possession of a firearm in furtherance of a drug-trafficking offense in violation of 18 U.S.C. § 924(c) (Count Three) carries a mandatory minimum consecutive imprisonment term of five years. See U.S.S.G. § 2K2.4.

could have found that the government proved each element of the crime beyond a reasonable doubt. United States v. Appolon, 715 F.3d 362, 367 (1st Cir. 2013). We evaluate the evidence in the light most favorable to the prosecution and draw all reasonable evidentiary and credibility inferences in favor of the verdict. United States v. García-Carrasquillo, 483 F.3d 124, 129-30 (1st Cir. 2007). Accordingly, "[d]efendants challenging convictions for insufficiency of evidence face an uphill battle on appeal." United States v. Pagán-Ferrer, 736 F.3d 573, 590 (1st Cir. 2013) (quoting United States v. Lipscomb, 539 F.3d 32, 40 (1st Cir. 2008)).

Nevertheless, we must "reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995). Where the evidence presented does not support the inference that a defendant had knowledge of the crime, we have consistently found the evidence insufficient. See United States v. Pérez-Meléndez, 599 F.3d 31, 42 (1st Cir. 2010) (holding that "circumstantial evidence was not sufficient to convict because it did not adequately support the inference that appellants either actually knew about or were willfully blind to the controlled substances they were transporting").

**A. Rodríguez (Aiding and Abetting an Attempt to Possess Narcotics with Intent to Distribute)**

The Supreme Court recently clarified that aiding and abetting liability requires the government to show that the defendant had "advance knowledge" of the elements of the offense. Rosemond v. United States, 134 S. Ct. 1240, 1249 (2014). Advance knowledge "means knowledge at a time the accomplice can do something with it — most notably, opt to walk away." Id. at 1249-50. Rodríguez contends that a reasonable jury could not have found him guilty of aiding and abetting an attempt to possess narcotics with the intent to distribute because there was insufficient evidence that he had knowledge of Santini's possession of narcotics.[4]

As noted, the evidence showed that Rodríguez and Santini, who are brothers-in-law, were driving together when they were pulled over by the police for a suspected traffic code violation. Once they were pulled over, Rodríguez, seated in the passenger seat, got out of the car, said "Thank you" to Santini and, after walking to the corner of the block, made a call on his cell phone. His hands were shaking. Suspicious that Rodríguez's shaking hands evinced a consciousness of guilt, Morales asked Rodríguez to put

---

[4] The government also argued that Rodríguez was in constructive possession of the drugs secreted in Santini's pocket. As a finding of constructive possession requires that Rodríguez was aware of Santini's possession of the drugs, we need not analyze this argument separately.

his hands on the wall, and Abreu proceeded to lift Rodríguez's shirt and then "bent down to put something on the ground." Morales then observed a fully loaded, .45 caliber Glock Model 21 pistol with an extended magazine of twenty-four bullets on the ground.

A search of Santini revealed that he was carrying 10.2 grams of a white powdery substance, a 13.1 gram bag of marijuana, ten small, clear, plastic bags, and $1,029 in cash. The government argues that Santini and Rodríguez's family relationship, their joint travel, and Rodríguez's visible nervousness when the car was pulled over, provide enough circumstantial evidence to establish that Rodríguez was aware of the drugs in Santini's pocket. We disagree.

The evidence did not disclose how long Santini and Rodríguez were together in the car, or what they were doing before they were in the car prior to arriving at the hardware store. There was no evidence about the nature of their relationship, other than that they are brothers-in-law, nor any evidence that they had discussed or planned to carry out a drug-trafficking offense. There was no evidence at all about their prior dealings with each other.

Morales' testimony revealed that he never saw a bulge in Santini's pockets, where the drugs and $1,029 in cash were stored. He only asked Santini to empty his pockets because he "felt that they were bulging" when he was conducting his search of Santini. The government offered no evidence suggesting that the drugs or

$1,029 in cash found on Santini were visible to Rodríguez at any point. In fact, Morales testified that the drugs and cash were only visible to the arresting officers once Santini placed them on the trunk of the car. This fact is not surprising. Santini was in possession of a small quantity of drugs: a 10.2 gram bag of a white powdery substance that he purchased for $150, and a 13.1 gram bag of marijuana.

The government points most strongly to Rodríguez's nervous behavior after he exited the car to support his knowledge of, and involvement in, Santini's drug trafficking. But there is a competing, alternative explanation for Rodriguez's nervous demeanor upon being pulled over: namely, that he was in possession of a firearm that he had purchased, illegally, at a housing project and for which he lacked a permit. Typically, this competing inference would pose no difficulty for the government. In order to proffer sufficient evidence to support a conviction "the government need not exclude every possible explanation" for a defendant's conduct. García-Carrasquillo, 483 F.3d at 131. Indeed, in most any other case, the jury would be "free to choose which of the two conflicting accounts of the evidence to believe, so long as the evidence viewed in the government's favor is adequate to establish guilt beyond a reasonable doubt." United States v. Ayala-García, 574 F.3d 5, 11 (1st Cir. 2009). Yet, here, Rodríguez's behavior provided what appears to be the government's sole evidence, beyond

-10-

mere speculation, that Rodríguez had knowledge of and was aiding and abetting the drug crime. Without additional circumstantial evidence from which the jury could rationally infer that one was more supportable than the other, that evidence of nervous behavior permits two equally plausible inferences. We "must reverse a conviction on the grounds of evidentiary insufficiency where an equal or nearly equal theory of guilt and a theory of innocence is supported by the evidence viewed in the light most favorable to the verdict." United States v. Woodward, 149 F.3d 46, 57 (1st Cir. 1998) (quotation and alteration omitted). Because the government offered scant additional evidence to support its proffered inference here, "a reasonable jury must necessarily entertain a reasonable doubt" about Rodríguez's knowledge of Santini's possession of narcotics. United States v. Andujar, 49 F.3d 16, 20 (1st Cir. 1995).

Given all of these deficiencies in the government's case against Rodríguez, the case becomes what it cannot be to support a conviction of aiding and abetting liability against Rodríguez — a mere presence case. We have said repeatedly that mere presence alone "is insufficient to prove knowing possession of narcotics." United States v. Martinez, 922 F.2d 914, 923 (1st Cir. 1991) (internal citation omitted); see also United States v. Medina-Román, 376 F.3d 1, 4 (1st Cir. 2004) (stating that evidence is insufficient to support a conviction of aiding and abetting

where it is based on "mere association" or "mere presence at the scene of a crime") (quoting United States v. Luciano-Mosquera, 63 F.3d 1142, 1150 (1st Cir. 1995)). We would be undermining that important proposition of law if we allowed this conviction to stand.[5]

## B. Santini (Possession of a Firearm in Furtherance of a Drug-trafficking Offense)

The government relied on two theories to support Santini's conviction for possession of a firearm in furtherance of a drug-trafficking crime: constructive possession and aiding and abetting liability. Both depend in some respect on showing that Santini had knowledge that Rodríguez was carrying the firearm. A finding of constructive possession requires a showing "that the person knows (or has reason to know) that the firearm is within easy reach, so that he can take actual possession of it virtually at will." United States v. Robinson, 473 F.3d 387, 399 (1st Cir. 2007). To aid and abet a § 924(c) violation Santini must have had "advance knowledge" Rodríguez was carrying a gun. Rosemond, 134 S. Ct. at 1249. "[A]n unarmed accomplice cannot aid and abet a § 924(c) violation unless he has foreknowledge that his confederate

---

[5] Because we hold that the government failed to establish Rodríguez's knowledge of the drugs, we must also vacate on that basis his conviction for aiding and abetting the possession of a firearm in furtherance of a drug-trafficking offense in violation of 18 U.S.C. § 924(c).

will commit the offense with a firearm." Id. (internal quotation marks omitted).

Santini was driving the Honda Accord and Rodríguez, in the passenger seat, was in possession of a .45 caliber Glock pistol and an extended magazine. At oral argument, the government stressed that a Honda Accord is such a small car that Santini must have seen that Rodríguez was carrying the Glock pistol with its extended magazine. However, according to the evidence presented at trial, the arresting officers saw the gun for the first time when they asked Rodríguez to lift his shirt. They did not report seeing the gun when Rodríguez was walking from the car, or when he was standing on the corner talking on his cell phone. The officers stated that they only asked Rodríguez to lift his shirt because he was acting suspiciously, not because they saw the bulge of the gun. Moreover, the government failed to emphasize any circumstantial evidence from which the jury could conclude that Santini was aware of the firearm while Rodríguez was in the vehicle. Given this failure, and the evidence at the jury's disposal, the government's argument that Santini must have seen the gun on Rodríguez's person — and thus either constructively possessed the firearm or aided and abetted Rodríguez's possession — rests on speculation.

Cases upholding aiding and abetting convictions that have found advance knowledge of a firearm had facts strikingly different from those here. For example, in United States v. Diaz-Castro, we

held that a defendant had advance knowledge of his co-defendant's possession of a firearm where his co-defendant testified that he instructed him to bring a firearm to the drug deal to provide security. 752 F.3d 101, 107 (1st Cir. 2014). Similarly, the Seventh Circuit found that a defendant had advance knowledge of his co-defendant's possession of a gun sufficient for aider and abetter status under Rosemond where he and his co-defendant cooperatively stole a car, kidnapped its driver, and his co-defendant held the driver at gunpoint while he was in the car. United States v. Newman, 755 F.3d 543, 546 (7th Cir. 2014).

In the final analysis, the government's case against Santini on the charge of possession of a firearm in furtherance of a drug-trafficking offense rests on the same faulty premise that undoes the case against Rodríguez — that mere presence in the car with an alleged accomplice is enough to establish the guilty knowledge required by aider and abetter liability. It is not. We must also vacate the firearm conviction against Santini.

## III.

With Santini, the driver of the car, in possession of a small quantity of drugs (or what appeared to be drugs), and Rodríguez, the passenger, in possession of a Glock pistol, the circumstances of their arrest were suspicious. A grand jury found in these circumstances probable cause to believe that Santini and Rodríguez were aiding and abetting each other in the attempted

possession of drugs and the use of a firearm in furtherance of drug trafficking. At trial, however, the government must convert that suspicion of criminal conduct and that probable cause into proof beyond a reasonable doubt. For the reasons stated, the government failed to do that here.

We hold that the evidence was insufficient for a rational jury to convict Rodríguez of aiding and abetting an attempt to possess narcotics with the intent to distribute in violation of 21 U.S.C. § 841. It follows, therefore, that he could not be guilty of possession of a firearm in furtherance of that offense in violation of 18 U.S.C. § 924(c). Similarly, we hold that there was insufficient evidence for a rational jury to convict Santini of aiding and abetting the possession of a firearm in furtherance of a drug-trafficking offense in violation of 18 U.S.C. § 924(c). We vacate these convictions and order the entry of judgments of acquittal with respect to them. The judgment of conviction based on Rodríguez's guilty plea to possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1) remains in place, as does Santini's conviction at trial for possession of drugs with the intent to distribute in violation of 21 U.S.C. § 841. We remand to the district court for re-sentencing on those convictions.

So ordered.