# United States Court of Appeals
## For the First Circuit

No. 13-1632

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ A. GARCÍA-ORTIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

H. Manuel Hernández, with whom H. Manuel Hernández, P.A., was on brief for Appellant.
Susan Z. Jorgensen, Assistant United States Attorney, with whom Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, were on brief for Appellee.

July 6, 2015

**THOMPSON, Circuit Judge**.  His third time before us, Defendant-Appellant José García-Ortiz ("García") asks us to vacate his 2004 robbery conviction, arguing that the government did not present enough evidence at his jury trial to sustain it.  He also argues that the district judge erred at his sentencing by failing to consider certain of his mitigating arguments, by ordering his sentences be served consecutively instead of concurrently, and by improperly imposing $60,000 in restitution.

Seeing error only in the district court's restitution order, we affirm García's conviction, and vacate and remand only the restitution portion of his sentence.

## BACKGROUND

As this is García's third appeal, we will not repeat another detailed recitation of the facts.  But here's our mise-en-scène.[1]

In 2001, a food warehouse manager and his security escort were walking to the manager's car with a bag of cash, which they planned to deposit at the bank.  Two men ran toward them.  One of the men grabbed the guard, and after a struggle, gunshots were

---

[1] On this appeal, García has not directed us to any newly-discovered evidence, so we drew the facts from our review of the trial evidence as articulated in United States v. García-Ortiz, 528 F.3d 74 (1st Cir. 2008).  As we noted there, we recite the facts in the light most favorable to the jury verdict, consistent with support from the trial record.  Id. at 77 n.1.

fired.  The guard, who was apparently armed, returned fire and shot and killed one of the ill-fated bandits.

After the mêlée, the manager heard voices from the nearby-parked getaway car yelling "kill him."  One of the robbers grabbed the bag of cash while the manager lay on the ground, beseeching mercy.  The manager heard two more shots (presumably from the robbers because the wounded guard had already emptied his chamber), but fortunately neither the manager nor guard were killed.  The getaway car sped away, and the assailants made off with $60,000.

Forensics later showed that three guns were fired during the robbery, one belonging to the guard.  The getaway car, which had been reported stolen about a month before the robbery, was recovered nearby the scene, donning a bullet hole in one of the side windows.  The rear window was also completely broken out and shell casings lay about, the backseat blood-stained.

Law enforcement naturally started investigating.  Police suspected García was involved in the robbery after they discovered a photo of him with the deceased robber at a mechanic shop that had been under police surveillance.

The FBI brought García (and other suspects) in to collect their DNA samples.  García also consented to a body search, during which the FBI found what appeared to be a bullet wound on his body with metallic residue.  Another piece of damning evidence, the FBI

lab confirmed that García's DNA was in the back seat of the abandoned escape ride, prompting the FBI to exclude the other suspects.

García was indicted on charges of intentional obstruction of commerce by robbery under the Hobbs Act, 18 U.S.C. §§ 2 and 1951(a) (Count One);[2] unlawfully carrying and using a firearm during a crime of violence under 18 U.S.C. §§ 2 and 924(c)(1)(A)

---

[2] 18 U.S.C. § 1951(a), the Hobbs Act, provides:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2 is the aiding and abetting provision, which provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

(Count Two);[3] and felony murder under 18 U.S.C. §§ 2 and 924(j) (Count Three).[4]

_____

[3] 18 U.S.C. § 924(c)(1)(A) provides, in relevant part, that

any person who, during and in relation to any crime of violence . . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .

> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

[4] 18 U.S.C. § 924(j) is the felony murder provision, which provides:

A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall--

> (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life; and
>
> (2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

18 U.S.C. § 1111 defines "murder," in relevant part, as

the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any . . .

-5-

After a 14-day trial, in August 2004 a jury convicted García on all three counts. At sentencing, the district judge handed down two concurrent life-imprisonment sentences on Counts One and Three, and a ten-year consecutive prison sentence on Count Two. García appealed both the conviction and sentences.

In 2008, we affirmed the conviction but vacated the sentence as to Count One because the district judge impermissibly sentenced García to life, even though the statutory maximum for that charge was 20 years. See United States v. García-Ortiz, 528 F.3d 74, 84-85 (1st Cir. 2008) ("García I"). We remanded to the district court for re-sentencing on that count. Id. at 85.

On remand, the district judge sentenced García to 50 months on Count One, to be served concurrently with a 240-month sentence on Count Three. See United States v. García-Ortiz, 657 F.3d 25, 27-28 (1st Cir. 2011) ("García II"). The judge also gave García an additional (consecutive) five years on Count Two. See id. at 27.

García appealed again, primarily arguing his conviction and sentence on Count Two violated his double jeopardy rights because that crime (unlawfully carrying a firearm during a crime of

_____

robbery . . . or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

-6-

violence) was a lesser included offense of the murder charge. See id. at 28. We agreed. The crux of our decision was the Supreme Court's admonition that "without a clear indication that Congress intended cumulative punishments for the same offense under two different statutes, courts must presume that Congress authorized only one punishment." Id. at 29 (citing Whalen v. United States, 445 U.S. 684, 691-92 (1980)). And, as we discussed in García II, unlawfully carrying a firearm was an element of felony murder under § 924(j); the latter "requires proof of [only] one additional fact: the death." García II, 657 F.3d at 28. Thus, we vacated García's conviction and sentence on Count Two, and affirmed the convictions on Counts One and Three. Id. at 31. But we remanded for re-sentencing on those counts, in case the district judge wanted to "unbundle and reconstitute the sentencing package." Id.

In April 2013, the district court again re-sentenced García, this time to 36 months on Count One and 240 months on Count Three, to be served consecutively. That made for a grand total of 23 years (two years fewer than the previous sentence). The court also ordered García to pay $60,000 in restitution to the food warehouse.

García now appeals for a third time. First, he says his armed robbery conviction -- and, as a result, the felony murder conviction premised on the robbery -- should not stand because the evidence at his trial established only that he was present at the

scene of the robbery.  Second, he argues the district judge erred (again) at sentencing by failing to properly consider the sentences of defendants in similar cases.  Third, García contends, the judge mistakenly ordered restitution.  Finally, he argues (in a brief he filed on his own, after his counselled brief was filed) that the district court erroneously ordered that he serve the sentences for Count One and Count Three consecutively, when he should only have to serve them concurrently.[5]

We find that only García's restitution argument bears any teeth.  We address each grievance in turn.

### DISCUSSION

### The Convictions

García has it right that if his robbery conviction was premised on his role as an aider and abettor, his "mere association with the principal, or mere presence at the scene of a crime, even when combined with knowledge that a crime will be committed, is not sufficient to establish . . . liability."  <u>United States</u> v.

---

[5] García also raises a number of additional arguments in his pro se brief.  Specifically, he argues: (1) his double jeopardy rights were violated because the robbery charge for which he was convicted is a lesser-included offense of felony murder; (2) the FBI's search of his body, which led to his arrest, was illegal; and (3) he could not be convicted under the felony murder statute because the defendants did not bring the gun that led to his co-robber's death.  We do not address these arguments because they could have (and therefore should have) been brought up in not just one, but two prior appeals. <u>United States</u> v. <u>Moran</u>, 393 F.3d 1, 11 (1st Cir. 2004) ("In general, available claims of error not raised in an initial appeal may not be raised during subsequent appeals in the same case.").

Medina-Román, 376 F.3d 1, 4 (1st Cir. 2004) (citation and alterations omitted). Rather, "[i]n order to sustain a conviction for aiding and abetting the government must prove, in addition to the commission of the offense by the principal, that the defendant consciously shared the principal's knowledge of the underlying criminal act, and intended to help the principal." United States v. Henderson, 320 F.3d 92, 109 (1st Cir. 2003).

Recognizing that we have twice "rejected [his] arguments attacking the sufficiency of the evidence," García nonetheless urges us to reassess whether the evidence presented at his trial was enough to convict him of armed robbery. According to García, the government only established his "mere presence" at the scene of the robbery -- not his "knowledge and active participation" in the crime, as aiding and abetting law requires.

García's argument fails -- yet again. Well established is that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Negrón-Almeda v. Santiago, 579 F.3d 45, 50 (1st Cir. 2009) (citation omitted and quotations omitted). That is, "a legal decision made at one stage of a criminal . . . proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court." United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004).

"We review de novo whether the law of the case doctrine applies." Negrón-Almeda, 579 F.3d at 50 (citation omitted).

In García I, we specifically rejected García's attacks on the sufficiency of the evidence. See García I, 528 F.3d at 83. García doesn't dispute that. Even still, he says, the law of the case doctrine should not apply here because exceptional circumstances call for a fresh look.

To be sure, the law allows us to "reopen a matter previously decided on a showing of exceptional circumstances -- a threshold which, in turn, demands that the proponent accomplish one of three things: show that controlling legal authority has changed dramatically; proffer significant new evidence, not earlier obtainable in the exercise of due diligence; or convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." Negrón-Almeda, 579 F.3d at 51-52 (citation and quotations omitted). But in García II, we already found that García "made no showing of any such exceptional circumstance." García II, 657 F.3d at 30. And on this go-round, we see no reason to doubt that decision.

García claims a recently-decided Supreme Court case clarifying the scienter (i.e., knowledge) requirement for aiding and abetting liability, Rosemond v. United States, 134 S. Ct. 1240

(2014), demands that García I came out the wrong way.[6]  See United States v. Holloway, 630 F.3d 252, 258 (1st Cir. 2011) (noting that we may reopen a matter "when an existing panel decision is undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court." (citation, quotations, and alterations omitted)).  We are not moved by this argument.

In Rosemond, the Supreme Court was tasked with deciding "what the Government must show when it accuses a defendant of aiding or abetting" a § 924(c) offense.  134 S. Ct. at 1243.  The Court held that "the Government makes its case by proving that the defendant actively participated in the underlying . . . violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission."  Id.  "[T]hat means knowledge at a time the accomplice can do something with it -- most notably, opt to walk away."  Id. at 1249-50.

Rosemond, while a significant change in the law for some circuits, does nothing for García's case.[7]  As his counsel essentially conceded at argument, this court had already been

---

[6] Given that the government does not argue on this appeal that García was convicted as a principal, we assume for purposes of resolving this appeal that García was convicted as only an aider and abettor to the armed robbery.

[7] Nor does our decision in United States v. Rodríguez-Martinez, 778 F.3d 367, 373 (1st Cir. 2015), which García cites in support of his argument.  Rodríguez-Martinez does not reflect any change in our law, but only our application of existing law to the specific facts of that case.

-11-

applying the "advance knowledge" requirement for aiding and abetting a § 924(c)(1) crime prior to Rosemond. See id. at 1244 (noting that some circuits, including this one, already had established law "that a defendant aids and abets a § 924(c) offense only if he intentionally takes some action to facilitate or encourage his cohort's use of the firearm" (citation and quotations omitted)); Medina-Román, 376 F.3d at 5-6 ("Knowledge is the central element of the crime of aiding and abetting the carrying or use of a firearm in violation of § 924(c)(1). To support aiding and abetting criminal liability under 18 U.S.C. § 2, that knowledge cannot be mere knowledge of a likelihood that a firearm will be carried or used but rather must amount to a practical certainty of the other's carrying or use."); United States v. Spinney, 65 F.3d 231, 239 (1st Cir. 1995) (requiring the government to adduce evidence "suggesting that firearms were actually contemplated in the planning stages, or that [aider and abettor] had any actual knowledge that [principal] would be armed"); United States v. Vázquez-Castro, 640 F.3d 19, 24 (1st Cir. 2011) ("To show aider and abettor liability, the government must prove that the defendant knew to a 'practical certainty' that the principal would use a weapon during the commission of the crime. . . . '[P]ractical certainty is a rubric that calls for proof verging on actual knowledge.'" (quoting Spinney, 65 F.3d at 238)). Thus, we do not believe (and García certainly has not convinced us) that Rosemond

changed or even undermined our existing law, as it pertains to the requirement that an aider and abettor of a § 924(c) crime have advance knowledge of the principal's intent to use a weapon.[8]  It follows, then, that Rosemond did not enhance the knowledge required of an aider and abettor of § 924(j).

García also has not presented us with any new evidence that might convince us to change our tune.  And he has not persuaded us that any "manifest injustice looms."  See United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993).  To be sure, García did not even raise this specific argument on his first appeal (that the evidence was lacking as to his advance knowledge that his cohorts would bring a gun to the robbery), which would have been the appropriate time to do so.  He instead chose to assert he was not even present at the robbery and focused his arguments on other sufficiency and evidentiary issues.  "[N]o credible explanation has been offered for [his] failure to assert the challenge in a more timely fashion."  See id.  Even at this last-ditch juncture, García has made no solid effort to convince us a blatant error occurred when we made our García I sufficiency determination (or when we upheld it in García II).  García does not parse out why the specific evidence presented to the jury at his trial was not enough to convict him of aiding and abetting armed

_____

    [8] Because we need not, we do not cast judgment on whether some other aspect of Rosemond's holding might be distinguishable from our pre-Rosemond case law.

robbery.  See United States v. Wallace, 573 F.3d 82, 89 (1st Cir. 2009) ("A finding of manifest injustice requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong, as well as a finding of prejudice." (citation and quotations omitted)).  In sum, García did not convince us in 2008 that he was wrongly convicted based on a lack of evidence, and he has not convinced us today to go back on our finding.[9]

Thus, despite García's persistence, neither twice -- nor thrice -- over were his sufficiency arguments good to repeat.  We see no reason to disturb our 2008 finding that the government presented sufficient physical and circumstantial evidence at trial that García participated in the robbery, and the relief he seeks simply cannot be achieved by making the same repeated request over multiple appeals.  As we have said before, and as is applicable here, "[t]he law of the case doctrine dictates that all litigation

---

[9] To the extent García argues that the district court did not sufficiently capture the knowledge requirement in its aiding and abetting jury instruction, we see two insurmountable problems. Given that Rosemond did not espouse any relevant change in our existing law, García should have challenged the aiding and abetting instruction in a prior appeal.  See Moran, 393 F.3d at 11.  Our decisions in García I and García II provide no indication that García disputed the aiding and abetting instruction during those appeals; nor does García's brief on this appeal.

In any event, García's one-sentence supplication (in a letter submitted post-briefing) asking us to consider this issue does not give us enough to go on, and so this issue is waived for lack of development.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

must sometime come to an end." Bell, 988 F.2d at 252. García's insistence that he was "merely present" at the scene of the crime is a non-starter. We will not further belabor the point.

## The Sentence

Next, García argues the district court erred at sentencing in three respects. First, the judge failed to adequately address why García's sentence did not line up with the sentences given to other defendants in similar cases, and had the court made such a consideration, García's sentence would have been closer to 15 years. Second, the judge mistakenly "continued" his restitution order, even though he had never ordered restitution in the first place. And third, his sentences for Counts One and Three should be served concurrently, not consecutively, as the district court ordered.

### Reasonableness

In assessing whether a district court has committed a sentencing error, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)

-15-

(citation and quotations omitted).  "Once the appellate court has satisfied itself that the sentence is procedurally sound, it must proceed, under the same abuse of discretion rubric, to review the substantive reasonableness of the sentence, taking into account the totality of the circumstances."  Id. (citation omitted).

Here, García focuses on the procedural reasonableness of his sentence,[10] arguing that the district court refused to consider his arguments that the sentences handed down in similar reported cases should guide the court's sentence in his case, thus preventing us from being able to "conduct a meaningful review of the [substantive] reasonableness of the District Court's sentence." We make short shrift of this argument.  18 U.S.C. § 3553(a)(6) says that a sentencing court must consider, among a number of other factors, the need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  García cited several cases to the district court in arguing that like the defendants in those cases, García's involvement in the crimes for which he was convicted was minimal, warranting a lower-end sentence.

---

[10] "The lack of an adequate explanation can be characterized as either a procedural error or a challenge to the substantive reasonableness of the sentence." United States v. Crespo-Rios, No. 13-2216, 2015 WL 2445616, at *10 (1st Cir. May 22, 2015).  Given that García's arguments focus on the district court's supposed failure to "explain why [his] arguments were being rejected on the record," and the lack of any developed argument as to what his sentence should have been, we deem García's reasonableness challenge to be a procedural one.

While the district court did not specifically distinguish every one of the cases García cited, it need not have. The "record makes manifest" that the judge considered García's arguments regarding § 3553(a)(6), rejecting them because "when you decide to go in a car and attack a person that most probably is with a weapon, to take $63,000, you have to know for sure that there may be somebody killed." See also United States v. Madera-Ortiz, 637 F.3d 26, 31 (1st Cir. 2011) ("We have confirmed that a sentencing court's explanation need not be precise to the point of pedantry." (citation and quotations omitted)). The courts in the comparator cases García offered found those defendants' criminal participation to be minimal. Here, the district court said enough to indicate that García was not in the same camp. Thus, we find that the sentence was not procedurally unreasonable.

## Restitution

We also make quick work of García's argument regarding the propriety of the district court's restitution order. The government has conceded error, and we agree one occurred and that the proper recourse is a remand on this issue.

A district court is statutorily required "to order a defendant to make restitution to victims of certain enumerated crimes of violence," including armed robbery. United States v. Salas-Fernandez, 620 F.3d 45, 48 (1st Cir. 2010); 18 U.S.C. § 3663A(a)(1), (c)(1)(A). An "order for restitution should be

-17-

tailored to require return of the purloined property or its equivalent." Salas-Fernandez, 620 F.3d at 48.

At García's most recent sentencing, the district judge ordered that restitution "continue[] to be part of the judgment," even though (the mandatory) restitution had never previously been ordered, such that it could continue. While a "detailed explication of the court's reasoning" in imposing a restitution order is not necessary, id., the court here provided none. Particularly, the court did not at all address whether a payment schedule would be appropriate. See id. at 49 (citing 18 U.S.C. § 3664(f)(2)) ("The [Mandatory Victims Restitution Act] requires a court, in setting out a payment schedule, to consider a defendant's financial circumstances and prospects."). Thus, given the court's mistaken view that it was merely continuing an already-imposed restitution order, we think the appropriate course of action another remand to allow the court to properly address restitution.[11]

---

[11] García also claims that the government waived the right to even ask for restitution because it failed to request it at his prior sentencings. But García has provided no compelling (or even developed) argument as to why the district court would not be permitted to order statutorily-mandated restitution at resentencing, and so this argument is waived. In any event, in the García II remand we gave the district court broad discretion to "unbundle and reconstitute the sentencing package." 657 F.3d at 31. See United States v. Pileggi, 703 F.3d 675, 680 (4th Cir. 2013) ("Because the appellate court had set aside the defendant's entire sentence and remanded for a de novo resentencing, the remand order had effectively wiped the slate clean."). To the extent García has more specific objections to the restitution order (such as the amount imposed, the victims to whom it will be paid, etc.), these issues should be fleshed out and addressed on remand.

-18-

<u>Consecutive Sentences</u>

Finally, García argues in a pro se brief that at re-sentencing, the district court erroneously ordered he serve the sentences for Count One and Count Three consecutively, as opposed to concurrently.[12]  A plucky effort, given that García had to chart this course pro se, we still find his shot sailed wide.

The backdrop for García's argument is § 924(c)'s mandate that "no term of imprisonment imposed on a person under [§ 924(c)] shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence . . . during which the firearm was used, carried, or possessed."  18 U.S.C. § 924(c)(1)(D)(ii).  Recall that the second time the district judge sentenced García, he ordered that the sentence for the § 924(c) conviction run consecutively to the felony murder sentence.

Then, in <u>García II</u>, we vacated the § 924(c) conviction and sentence for double jeopardy reasons and remanded for re-sentencing.  We also noted in <u>García II</u> that in light of the fact that we vacated the § 924(c) conviction,

---

[12] Despite the government's misrepresentation to the contrary, this claim was preserved below.  Not only did García brief the issue in his sentencing memorandum, but both sides argued it at sentencing.  Therefore, we review this claim for abuse of discretion, as we would other preserved claims of sentence unreasonableness.  <u>See</u> <u>United States</u> v. <u>Martin</u>, 520 F.3d 87, 92 (1st Cir. 2008).

> the statutory requirement that a part of the sentencing package run consecutively arguably applies to section 924(j) (count 3). In view of these circumstances, we think it likely that the district court may wish to unbundle and reconstitute the sentencing package . . . the district court may also wish to ameliorate the overall sentence in light of the reduced number of counts on which sentence will be imposed.

García II, 657 F.3d at 31 (citations omitted).

With our warning in mind, the government argued at re-sentencing that García's § 924(j) sentence must run consecutively to his § 1951(a) sentence because even though the § 924(c) conviction was vacated, the underlying felony was still based on a violation of § 924(c).[13] García disagreed, arguing that the court was not required to impose consecutive sentences, but acknowledged that the court bore the discretion to do so. After engaging with both sides on the issue, the court ultimately imposed consecutive sentences.

Here's where García falls short. Although the district court did end up handing down consecutive sentences, the court rejected the government's argument that the consecutive sentences were mandatory, and instead exercised its discretion to impose consecutive sentences. Notably, when the government argued that

---

[13] Recall that § 924(j) provides that a "person who, in the course of a violation of [§ 924(c)], causes the death of a person through the use of a firearm, shall - (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life."

the court was required to run the sentences consecutively, the judge responded: "I don't think that that's the law . . . . Read the last paragraph of [García II]. [It] says that I could run it consecutively or concurrently." While the government continued to argue the point (and while the court heard additional argument from García), it seems clear to us that the court was not adopting the government's take on the law. Therefore, since the district court was merely exercising its discretion to impose consecutive sentences, García's argument that the court erred in thinking it had to impose them is misplaced.[14] Beside the fact that his counsel conceded at sentencing that the district court had such discretion, the general sentencing principle under 18 U.S.C. § 3584(a) is that "[m]ultiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively." (Emphasis added). García has not directed us to any cases or other authority that says his sentences must run concurrently, and we are aware of none. García's argument holds no water.

_____

[14] We recognize, as García points out in his pro se brief, that our sister circuits are split on whether § 924(j) incorporates by reference § 924(c)'s prohibition on concurrent sentences for the underlying crime of violence and the felony murder sentence. See, e.g., United States v. Berrios, 676 F.3d 118, 139 (3d Cir. 2012) (adopting the majority rule that § 924(j) does prohibit concurrent sentences); United States v. Julian, 633 F.3d 1250, 1253 (11th Cir. 2011) (adopting the opposite rule). We have not decided this issue one way or another, and need not today, given that the district court only used its discretion to impose consecutive sentences.

**THE ADIEU**

For these reasons, we affirm García's conviction and sentences, save the restitution order, which we vacate and remand consistent with this opinion.

We expect that this fourth sentencing will provide some finality to this protracted appellate matter.