# United States Court of Appeals
## For the First Circuit

No. 14-2068

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS ÁNGEL MANSO-CEPEDA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Francisco A. Besosa, U.S. District Judge]

Before
Torruella, Hawkins,* and Barron,
Circuit Judges.

Víctor González-Bothwell, Assistant Federal Public Defender, with whom Eric A. Vos, Federal Public Defender, and Vivianne M. Marrero-Torres, Assistant Federal Public Defender, were on brief, for appellant.

Nicholas Warren Cannon, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Carmen M. Márquez-Marín, Assistant United States Attorney, were on brief, for appellee.

January 20, 2016

---

* Of the Ninth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Following a jury trial, Luis Ángel Manso-Cepeda ("Manso") was convicted for aiding and abetting a convicted felon, Lisander Casillas-Sánchez ("Casillas"), in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 2.  He directly appeals the district court's denial of his motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  He asserts that the evidence was insufficient to support his conviction in light of the advance knowledge requirement for aiders and abettors articulated in Rosemond v. United States, ___ U.S. ___, 134 S. Ct. 1240 (2014).  For the reasons discussed herein, we affirm.

**I.**

We recite the facts in the light most favorable to the prosecution.  United States v. Ofray-Campos, 534 F.3d 1, 11 (1st Cir. 2008).  At about 11:40 p.m., on the evening of January 26, 2014, Officer Onil Tejeda-Jiménez ("Tejeda") was patrolling in his police car in the El Hobo and Honduras sectors of Loíza, Puerto Rico.  Sergeant Gadiel Bonilla-Álamo ("Bonilla") sat as a passenger in Tejeda's car.  At that time, Tejeda was accompanied by two other patrol cars, one of which was driven by Officer José Cruz-Cervera ("Cruz").

Tejeda observed a gray Mazda Protegé (the "Mazda") with windows that appeared to be tinted beyond the level permitted under Puerto Rico law traveling in the opposite direction.  Tejeda

-2-

attempted to initiate a traffic stop, turning on his vehicle's rotating lights and sirens and motioning for the vehicle to halt by sticking his hand out the driver's side window. The Mazda did not comply, instead passing Tejeda.

When Cruz saw that the Mazda had failed to obey Tejeda, he turned on his vehicle's rotating lights and moved into the Mazda's lane to block the car. The Mazda drove onto the sidewalk to avoid Cruz's vehicle and continued driving away from the patrol cars. The officers immediately pursued the Mazda, with Cruz following Tejeda and Bonilla.

The Mazda turned onto another street and briefly stopped during the chase. Tejeda and Bonilla observed one of the rear passenger doors open. Tejeda, who was positioned directly behind the Mazda, observed an individual (later identified as Casillas) throw a firearm onto the grass alongside the road. The Mazda then accelerated "[a]s fast as it could" away from Tejeda and Bonilla. At that moment, Cruz, who was somewhat behind the other two vehicles, arrived at the scene, and Bonilla signaled for Cruz to continue following the Mazda.

Tejeda and Bonilla remained at the scene where the Mazda had stopped. Tejeda retrieved the gun, and "since it [was] quite large," placed it in the rear seat of his car. At the trial, expert witness Julio Vélez identified the firearm as a Winchester 1200 pump-action shotgun, which typically has a barrel that is

between twenty-six and twenty-eight inches. The gun found by Tejeda had a barrel that had been sawed down to sixteen inches. The gun was loaded and contained six cartridges.

Meanwhile, Cruz continued his pursuit of the Mazda. The Mazda eventually stopped, turning into the entrance of a residence. There, Cruz observed an individual holding a black pistol exit the front passenger seat and flee into a wooded area. Casillas and the driver, later identified as Manso, exited the vehicle. Both men were placed under arrest. At the time, Casillas was wearing a tee shirt and basketball shorts.

In an interview conducted with Special Agent José Díaz-Narváez ("Díaz") after his arrest, Manso asserted that no one was riding in the front passenger seat and that he had stopped in that neighborhood to pick his wife up from a social gathering. Manso explained that he did not halt when Tejeda first signaled "because he wanted to go to a safer place" to stop his car. Cruz and Tejeda testified that they did not observe Manso's wife at the residence where he stopped. The jury also heard testimony that, earlier that same day, Bonilla and Cruz had confronted Casillas and observed him and Manso with a group of friends at Manso's father's home.

Manso was indicted for one count of aiding and abetting a convicted felon in the possession of a firearm under 18 U.S.C.

§§ 2[1] and 922(g)(1).[2]  At trial, the parties stipulated that Casillas was a convicted felon and therefore a prohibited person under § 922(g)(1), that Casillas knowingly possessed the Winchester shotgun loaded with six cartridges in or affecting interstate commerce, and that the Mazda was registered to Manso's mother.  At the close of the Government's case, Manso moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, which the district court denied from the bench. Following the two-day trial, the jury found Manso guilty of aiding and abetting, and Manso was sentenced to fifteen months' imprisonment and three years' supervised release.  Manso filed a renewed motion for judgment of acquittal, which the district court denied in a written opinion and order.  He appeals that decision here.

---

[1]  18 U.S.C. § 2 is the federal aiding and abetting statute.  It provides, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18 U.S.C. § 2(a).

[2]  "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

## 1. Standard of Review

"Challenges to the sufficiency of the evidence are reviewed de novo." United States v. Rodríguez-Martínez, 778 F.3d 367, 371 (1st Cir. 2015). The evidence is evaluated in the light most favorable to the verdict. United States v. Santos-Rivera, 726 F.3d 17, 23 (1st Cir. 2013). While the government need not rule out each "theory consistent with the defendant's innocence . . . , we must decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime." Id. (quoting United States v. Troy, 583 F.3d 20, 24 (1st Cir. 2009)). The standard of review is rigorous, and defendants challenging the sufficiency of the evidence face "an uphill battle." United States v. Seng Tan, 674 F.3d 103, 107 (1st Cir. 2012).

## 2. Aiding and Abetting under Rosemond

Manso's argument centers on the advance knowledge requirement articulated in Rosemond, which involved a defendant's conviction for aiding and abetting a violation of 18 U.S.C. § 924(c) during "a drug deal gone bad." Rosemond, 134 S. Ct. at 1243. Section 924(c)(1)(A) provides minimum mandatory sentences for those "who, during and in relation to any crime of violence or drug trafficking crime . . . use[] or carr[y] a firearm."

The Court in Rosemond began with the well-established premise that "a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." Rosemond, 134 S. Ct. at 1245. For purposes of the intent inquiry, "a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission." Id. at 1249. Turning to the question of when an aider and abettor must know that a gun will be used, the Court clarified that the "defendant's knowledge of a firearm must be advance knowledge," i.e., "knowledge at a time the accomplice can do something with it -- most notably, opt to walk away." Id. at 1249-50. If the gun emerges only when the defendant no longer has a "realistic opportunity to quit the crime . . . , the defendant has not shown the requisite intent to assist a crime involving a gun." Id. at 1249. Yet the Supreme Court noted that, "if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge." Id. at 1250 n.9.

## 3. Rosemond's Application to Manso

Manso contends that the Government "only succeeded in establishing that [he] knew something illegal was afoot inside his vehicle when officer Tejeda attempted to conduct a traffic stop."

To the contrary, the Government presented evidence that would have allowed the jury to infer that Manso knew that Casillas possessed a gun when Casillas first entered the Mazda. First, the firearm was over a foot long -- so long that Tejeda needed to place it in the rear seat of his patrol car after he retrieved it. Casillas, who wore only a tee shirt and shorts, would have had difficulty concealing a gun of that size. Further, Casillas and Manso had been observed socializing that same day. The jury may have reasonably concluded that Manso was not merely giving an acquaintance a ride, but that he had spent time with Casillas throughout the evening and may have seen Casillas carrying the gun before he entered the car. As a result, it is not "unreasonable, insupportable, or overly speculative" for the jury to infer that Manso was aware of the gun from the moment Casillas entered his car. United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995) ("Reliance on indirect, as opposed to direct, evidence in a criminal case is both permissible and commonplace.").

In this way, this case is distinguishable from Rodríguez-Martínez, where we determined that there was insufficient evidence to conclude that the defendant aided and abetted the possession of a firearm in furtherance of a drug-trafficking crime. We noted that the gun in that case -- a Glock pistol -- had been hidden in the co-defendant's jacket such that "the arresting officers saw the gun for the first time when they

-8-

asked [the defendant] to lift his shirt," and we therefore determined that the government failed to present evidence that would allow the jury to infer that the defendant ever saw the gun. Rodríguez-Martínez, 778 F.3d at 373-74. Conversely, in the case at hand, the Government presented evidence from which the jury could infer that Manso saw the gun prior to the traffic stop, namely, the relationship between Manso and Casillas, the gun's size, and Casillas's attire.

Moreover, Manso's argument that the evidence only supports the conclusion that he saw the gun when Tejeda attempted to stop the car fails to acknowledge the Supreme Court's instructions that a "jury can permissibly infer from [the defendant's] failure to object or withdraw" once he sees a gun that he had advance knowledge of the firearm. Rosemond, 134 S. Ct. at 1250 n.9. As a result, under Rosemond, the jury could have inferred from Manso's failure to withdraw that he was aware of the gun before the traffic stop.

In addition, Manso's conduct easily satisfies the affirmative act requirement as his evasive actions facilitated Casillas's continued possession of the firearm. See id. at 1246-47 (describing the affirmative act requirement). Viewing the evidence in the light most favorable to the jury verdict, we find that a jury reasonably could have determined that Manso's flight and subsequent actions aided Casillas in avoiding the police and

-9-

thus concealing his firearm from them. Manso did not simply give Casillas a ride: he took part in a police chase. Moreover, Manso's assertion that the evidence only supported a conviction as an "accessory after the fact" under 18 U.S.C. § 3 is unavailing: Casillas continued to possess the gun during the first leg of the chase, and Manso's evasive driving aided his continued violation of § 922(g)(1) during that time.[3]

Further, even if we accept Manso's contention that he only learned of the gun when Tejeda first tried to stop the Mazda, Manso does not adequately explain why it was too late to withdraw at that moment. See Rosemond, 134 S. Ct. at 1249-50. Manso reacted to Tejeda's attempted stop by driving onto a sidewalk and sparking a high-speed car chase with three patrol cars. It is unclear why Manso could not have made a different choice, namely, to pull to the side of the road.[4] Manso fails to address why a

---

[3] During oral argument, the Government stated that Manso's conduct would have supported convictions under 18 U.S.C. §§ 2 and 3. This assertion is problematic as "[t]he temporal boundary between principals and aiders and abettors, on one hand, and accessories after the fact, on the other hand, . . . remains important in federal criminal law." United States v. Figueroa-Cartagena, 612 F.3d 69, 73 (1st Cir. 2010). That said, Manso's conduct continued during the crime's commission and persisted after the crime was arguably complete -- when Casillas relinquished the gun. Nevertheless, this Court declines to address whether such behavior could have invited liability under both provisions of the criminal code.

[4] In this way, Manso's behavior is distinguishable from the situation described by the Supreme Court in which "an accomplice agrees to participate in a drug deal on the express condition that no one bring a gun to the place of exchange," but, during the deal,

-10-

reasonable jury could not have determined that, once Tejeda attempted the traffic stop and Manso became aware of the gun, Manso could not have effectively "walk[ed] away," id., by simply stopping his car. Indeed, the jury could have determined that Manso's purported reasons for failing to stop -- that he preferred to pull over in a safer area and wanted to pick his wife up from an event -- were not credible in light of his evasive and potentially dangerous behavior, including driving onto a sidewalk and speeding, and the fact that his wife was not present in the neighborhood where he eventually stopped.[5]

_____

sees a gun hidden in his accomplice's jacket. Rosemond, 134 S. Ct. at 1251. The Court explained that the defendant "might increase the risk of gun violence" by withdrawing in the middle of the deal and, therefore, "a jury is entitled to find that the defendant intended only a drug sale" and lacked advance knowledge of the firearm. Id. Refusing to comply with a policeman's orders and engaging in a high-speed chase is inconsistent with the Supreme Court's reasoning here, which touches on concerns that a defendant's behavior may increase the risk of gun violence. A jury reasonably could have found that Manso's acts increased -- rather than decreased -- the risk of harm.

[5] During oral argument, Manso suggested that, once the act of possession began, the offense had already commenced and Manso could no longer have advance knowledge of its elements. Manso failed to raise this point in his appellate brief, despite having addressed it before the district court on multiple occasions and expanding upon it in oral argument. In any event, § 922(g)(1) has no such temporal element: possession is a continuous violation that "is generally understood as a course of conduct." United States v. Benjamin, 711 F.3d 371, 378 (3d Cir. 2013); accord United States v. Destefano, No. 98-2054, 1999 WL 1319192, at *1 (1st Cir. Nov. 22, 1999). And although a defendant must "participate[] in a criminal venture with full knowledge of the circumstances constituting the charged offense," Rosemond, 134 S. Ct. at 1248-49, "a defendant can be convicted as an aider and abettor without proof that he participated in each and every element of the

## 4. Jury Instructions

The Court in Rosemond stated that aiding and abetting jury instructions must "direct the jury to determine when [the defendant] obtained the requisite knowledge." Rosemond, 134 S. Ct. at 1251-52. Here, the jury instructions asked the jury to determine, in relevant part, whether Manso "consciously shared Mr. Casillas-Sánchez's knowledge that he possessed the shotgun." On appeal, Manso makes a fleeting reference to the jury instructions, asserting, in a single sentence, that the jury "was not directed to determine when Mr. Manso obtained the requisite knowledge." Manso failed to bring this argument before the district court, despite the trial judge raising the issue of Rosemond's directive concerning jury instructions.[6] As Manso did not object below and the issue received only cursory treatment before this Court, we consider the argument waived. See United States v. García-Ortiz, 792 F.3d 184, 191 n.9 (1st Cir. 2015) (not addressing whether jury instructions "did not sufficiently capture

_____

offense," id. at 1246 (quoting United States v. Sigalow, 812 F.2d 783, 785 (2d Cir. 1987)). It follows that a defendant may aid and abet a convicted felon's possession of a gun under § 922(g)(1) without contributing to his acquisition of the firearm.

[6] When discussing the Rule 29 motion, the district court noted that "[o]ne of the things highlighted here by [defense counsel] in the Rosemond case talks about juror instructions." This statement does not imply that Manso raised an objection to jury instructions before the district court. Rather, Manso appears to have highlighted this issue in his discussion of the "advance knowledge" requirement as it related to the evidence adduced at trial.

-12-

the knowledge requirement" under <u>Rosemond</u> as the issue was "waived for lack of development").[7]

## III.

The judgment of the district court is affirmed.

**<u>Affirmed</u>.**

---

[7]  Were we to address this issue, we would review the jury instructions under a plain error standard in light of Manso's failure to object before the lower court.  Fed. R. Crim. P. 52(b). On plain error review, Manso would need to demonstrate that the error was "clear or obvious."  <u>United States</u> v. <u>García-Torres</u>, 341 F.3d 61, 66 (1st Cir. 2003).  Manso would have difficulty making this showing:  the First Circuit already had an advance knowledge requirement for aiding and abetting convictions prior to <u>Rosemond</u>, and this Court has consistently used the "consciously shared" formulation to describe our aiding and abetting law.  <u>García-Ortiz</u>, 792 F.3d at 188-90 (querying whether the defendant "consciously shared the principal's knowledge"); <u>Spinney</u>, 65 F.3d at 235 (describing the "consciously shared" inquiry as one of the "central requirement[s]" of an aiding and abetting violation). Accordingly, an error in which the district court used a well-established formulation of unchanged First Circuit law is unlikely to qualify as plain error.  <u>See</u> <u>United States</u> v. <u>Davis</u>, 750 F.3d 1186, 1193-94 (10th Cir. 2014) (finding that the same instruction "necessarily encompasses the planned use of a firearm" and that the jury "implicitly found that [the defendant] had advance knowledge of the firearm").